```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
NAWAF SALEH ALGAZALI, et al.,                                :
                                                             :
                                    Plaintiffs,              :   23 Civ. 6038 (LGS)
                 -against-                                   :
                                                             :   OPINION & ORDER
ANTHONY BLINKEN, et al.,                                     :
                                                             :
                                    Defendants.              :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Nawaf Saleh Algazali and his wife Raihan Dhaif Allah Suhail bring this mandamus action against Anthony Blinken, U.S. Secretary of State; Embassy of the United States of Cairo, Egypt; and United States Department of State. In their First Amended Complaint ("FAC"), Plaintiffs seek an order compelling Defendants to revoke the refusal of Plaintiffs' immigrant visa application for Suhail and compelling Defendants to adjudicate it properly. The FAC also seeks a declaration that Defendants' policies and practices discriminated against Yemeni applicants and Yemeni-Americans.

The FAC asserts six causes of action: (1) a violation of the Administrative Procedure Act ("APA") for wrongful refusal to issue a valid visa (Count One); (2) a violation of Plaintiff Algazali's Fifth Amendment right to procedural due process in the adjudication of Plaintiffs' visa application (Count Two); (3) a violation of the Immigration and Nationality Act ("INA") by subjecting Plaintiffs to a visa adjudication process that discriminates against Yemeni petitioners (Count Three); (4) a violation of Plaintiffs' Fifth Amendment right to equal protection by subjecting Yemeni petitioners and beneficiaries to discriminatory procedures to deny or prevent the adjudication of their visa petitions (Count Four). The FAC also asserts causes of action

seeking relief under the Declaratory Judgment Act and Mandamus Act, respectively (Counts Five and Six).

Defendants move to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons below, Defendants' motion to dismiss is granted.

**I.      BACKGROUND**

The following facts, from the FAC and the parties' submissions, are undisputed and are provided as background for the motion to dismiss.

Plaintiff Algazali is a U.S. citizen. His wife, Suhail, is a Yemeni national residing in Cairo, Egypt. On February 14, 2019, Algazali filed an I-130 Petition, the form establishing a spousal relationship for immigration purposes, for Suhail. The petition was denied for unknown reasons on December 19, 2019. Subsequently, on November 25, 2020, Algazali initiated the current U.S. visa application process for Suhail by filing a second I-130 Petition. The petition was approved on March 22, 2022. After Suhail filed her immigrant visa application, an interview was scheduled for March 5, 2023, at the U.S. Embassy in Cairo. *See Rashed v. Blinken*, No. 24 Civ. 964, 2024 WL 4904701, at *1 (S.D.N.Y. Nov. 27, 2024) (outlining the statutory and regulatory framework for obtaining a family-based immigrant visa).

At the interview, the consular officer refused the application under 8 U.S.C. § 1201(g), which provides for refusal if it appears the applicant is ineligible to receive a visa or the application is non-compliant. The officer's refusal worksheet requested a new joint sponsor. Ten days later, the Consulate emailed Algazali and asked Plaintiffs to complete a supplemental questionnaire. The FAC describes the questionnaire as substantially similar to the DS-5355 form, a form first promulgated in 2017 as part of the travel ban that targeted individuals seeking entry to the United States from primarily Muslim countries. Plaintiffs complied with both

requirements. Approximately a week later, on April 26, 2023, Defendants issued another refusal under 8 U.S.C. § 1201(g), again with a worksheet requesting a new joint sponsor. On July 13, 2023, Plaintiffs filed this action.

II.     DISCUSSION

　　A.     **Subject Matter Jurisdiction**

The Court has subject matter jurisdiction to adjudicate Plaintiffs' claims because the claims are not moot, and each cause of action is asserted under either a federal statute or the U.S. Constitution.

　　　　1.     **Standard**

Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper "when the district court lacks the statutory or constitutional power to adjudicate it." *Green v. Dep't of Educ.*, 16 F.4th 1070, 1075 (2d Cir. 2021). When considering a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016);[1] *accord Manning v. City of New York*, No. 23 Civ. 2352, 2024 WL 3480437, at *2 (S.D.N.Y. July 19, 2024). But when "jurisdictional facts are placed in dispute," the court must "decide issues of fact by reference to evidence outside the pleadings . . . ." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022); *accord Manning*, 2024 WL 3480437, at *2. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain*, 838 F.3d at 134.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

### 2. Mootness

Contrary to Defendants' argument, Plaintiffs' claims for injunctive relief are not moot because Plaintiffs have a continued interest in the adjudication of their visa application. A federal court's jurisdiction is limited to cases where the "litigant's interest in the outcome continues to exist throughout the life of the lawsuit." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022). The case must be dismissed when the redressable injury ceases to exist and when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* The party asserting that a case is moot "bears the burden to establish that a once-live case has become moot." *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022).

Here, after Suhail's application was refused, Plaintiffs provided additional information as instructed in support of the application. Plaintiffs have a continuing personal stake in pursuing their visa application and challenging Defendants' allegedly discriminatory practices. *See Rashed*, 2024 WL 4904701, at *2 (holding the applicant's claim is not moot when he seeks a further decision on the visa application).

Defendants argue that the visa adjudication claims are moot because: the consular officer refused to issue the visa; that decision is not reviewable under the doctrine of consular nonreviewability; and it is therefore "impossible for a court to grant any effectual relief whatever to the prevailing party." *Palmer*, 51 F.4th at 503. This argument is flawed for two reasons. The Court retains jurisdiction despite the doctrine of consular nonreviewability because the doctrine is not jurisdictional. *Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024); *Esghai v. U.S. Dep't of State*, No. 24 Civ. 2993, 2024 WL 4753799, at *3 (S.D.N.Y. Nov. 12, 2024). The refusal also does not deprive Plaintiffs of their personal stake because they are seeking "a further decision on the visa application." *Rashed*, 2024 WL 4904701, at *2.

### 3. Federal Question Jurisdiction

Defendants' assertion of lack of subject matter jurisdiction under 28 U.S.C. § 1331 also fails. The decisions on which Defendants relied are all rooted in consular nonreviewability. *See, e.g.*, *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (finding no jurisdictional basis as "the judiciary will not interfere with the visa-issuing process"); *Khanom v. Kerry*, 37 F. Supp. 3d 567, 575 (E.D.N.Y. 2014) (declining to review Consul General actions). As noted above, the doctrine is not jurisdictional. Each of the FAC's causes of action gives rise to federal question jurisdiction because each claim is asserted either under a federal statute or the U.S. Constitution. *See* 28 U.S.C. § 1331. Defendants are incorrect that subject matter jurisdiction cannot rest on certain claims on which Plaintiffs lack a right to relief because subject matter jurisdiction requires a plaintiff only to "plead[] a colorable claim arising under the Constitution or laws of the United States," *Ozaltin v. Ozaltin*, 708 F.3d 355, 371 n.23 (2d Cir. 2013), which Plaintiffs did.

### B. Rule 12(b)(6)

#### 1. Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] . . . claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). Under Rule 12(b)(6), a court "accept[s] as true all well-pleaded factual allegations, draw all reasonable inferences in the plaintiff's favor, and assess the complaint to determine whether those allegations plausibly

establish entitlement to relief." *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024).  A court does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

### 2. Plaintiffs' Visa-Adjudication Claims (Counts One, Two and Six)

The FAC in Count Two alleges a violation of Plaintiff Algazali's Fifth Amendment right to procedural due process in the adjudication of Plaintiffs' visa application.  That claim, as Plaintiffs acknowledge, has been abrogated by the Supreme Court's recent decision in *Muñoz*, 602 U.S. 899.  Count Two is dismissed.

The FAC asserts two remaining visa adjudication claims: a violation of the APA for wrongful refusal to issue a valid visa (Count One) and a claim under the Mandamus Act alleging the improper and untimely adjudication of Suhail's visa application (Count Six).  For relief tied to these claims, the FAC seeks (1) an order compelling Defendants to revoke their allegedly improper refusal of Suhail's visa application and to adjudicate Suhail's application properly within 30 days and (2) a declaration that Suhail is not inadmissible to the United States.

These causes of action and related requests for relief are foreclosed by the doctrine of consular nonreviewability.  As the Supreme Court explained in *Muñoz*, an executive officer's action "to admit or to exclude an alien is final and conclusive." 602 U.S. at 908.  "The Judicial Branch has no role to play unless expressly authorized by law." *Id.*  Because the INA does not authorize judicial review of a consular officer's denial of a visa, the federal courts cannot review those decisions. *Id.*  One "narrow exception to this bar exists when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Id.*  This exception does not apply, as *Muñoz* held that a U.S. citizen has no constitutional right to bring a spouse into the United States. *Id*. at 903, 910-11, 917.

The consular officer's refusal of Suhail's visa application is shielded from judicial review. At a consular interview, the officer must do one of three things: (1) "issue the visa," (2) "refuse the visa" or (3) "discontinue granting the visa." 22 C.F.R. § 42.81(a). The officer chose the second option and refused Suhail's visa. The refusal is confirmed by the status of Suhail's visa application on Defendants' website, listed as "Refused," according to the FAC. Regardless of the propriety of the refusal or the officer's refusal worksheet, the officer's decision to exclude Suhail is nonreviewable. *See Muñoz*, 602 U.S. at 908.

Plaintiffs argued that both refusals, due to their generalized nature and requests for more information, were only interim decisions and should be exempt from the doctrine of consular nonreviewability. Most of the courts in this Circuit disagree and hold that the doctrine precludes court intervention in the visa issuing process, whether a plaintiff is challenging a visa refusal or delay in making a visa decision. *See Esghai*, 2024 WL 4753799, at *6 (collecting cases in which courts declined to intervene in the visa issuing process, even where the immigration agency had not acted at all on the application); *see also Hsieh*, 569 F.2d at 1181 ("The district court correctly held that no jurisdictional basis [exists] for review of the action of the American Consul in Taiwan *suspending* or denying the issuance of immigration visas to appellant's children there." (emphasis added)).

Recently, some courts have held that the consular nonreviewability did not apply in cases where the plaintiff was not challenging a consular official's decision to refuse to issue a visa, but instead was challenging the delay in making a decision based on a distinction between action and inaction extrapolated from *Hsieh* and out-of-circuit authorities. *See, e.g.*, *Ahmed v. Bitter*, No. 23 Civ. 189, 2024 WL 22763, at *5 (E.D.N.Y. Jan. 2, 2024) (holding that consular nonreviewability, as a jurisdictional doctrine, did not deprive the court of subject matter

7

jurisdiction over the plaintiff's claims concerning her son's visa application, which was never acted upon for eight years due to administrative reasons, but nevertheless dismissing them); *Waris v. Bitter*, No. 23 Civ. 9487, 2024 WL 3237914, at *4 (S.D.N.Y. June 28, 2024) (holding that the doctrine and its jurisdictional bar do "not apply to actions seeking to compel visa adjudications," where the visa application was refused because of an error in the plaintiff's documentation and then the visa application was not acted upon for a period of months after the error had been corrected, but dismissing the complaint for failure to state a claim because of insufficient delay). These cases address consular nonreviewability as a jurisdictional bar, which it now clearly is not after the Supreme Court's ruling in *Muñoz*. *See* 602 U.S. at 908. Of note is that these cases did not compel the executive branch to adjudicate a visa application, despite their holding that the consular nonreviewability doctrine does not apply to cases challenging a delay rather than an adverse decision. *See Ahmed*, 2024 WL 22763, at *8-9; *Waris*, 2024 WL 3237914, at *5-8; *but see Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393-94 (S.D.N.Y. 2004) (refusing to dismiss the plaintiff's claim for delay in adjudication of his visa status adjustment application).

The Second Circuit has never recognized or addressed the distinction between consular inaction and action as a basis for judicial intervention in the visa-issuing process. In *Hsieh*, the issuance of the visas was "held up." 569 F.2d at 1181. It is unclear whether the visas in that case were refused or simply not adjudicated. Allowing for either circumstance, the Second Circuit held that "no jurisdictional basis [exists] for review of the action of the American Consul in Taiwan suspending or denying the issuance of immigration visas . . . ." *Id*. at 1182. Although *Muñoz* abrogated *Hsieh*, which applied consular nonreviewability as a jurisdictional bar, the Second Circuit's reasoning in *Hsieh* was nevertheless rooted in judicial non-interference with

8

immigration matters. *Id*. at 1181 (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972)). The Supreme Court recently reaffirmed that principle in *Muñoz*, 602 U.S. 907-08. The doctrine of consular nonreviewability prevents the court from granting Plaintiffs the relief requested in the FAC -- a declaration that Suhail is not inadmissible to the United States and an order compelling Defendants to revoke the refusal of Suhail's visa application and to adjudicate Suhail's application within 30 days.

### 3. The INA Claim (Count Three)

The FAC's claim under the INA (Count Three), specifically 8 U.S.C. § 1152(a)(1)(A), for subjecting Yemeni petitioners and beneficiaries to discriminatory procedures, fails because challenging these procedures is outside the purview of the statute. Section 1152 primarily addresses the numerical limitations of visas available to applicants of different national origins. 8 U.S.C. § 1152(a)(2). It states that, except for the numerical limitations and several other provisions, "no person shall . . . be discriminated against in the issuance of an immigrant visa because of the person's . . . nationality . . . ." *Id.* § 1152(a)(1)(A). This anti-discrimination guarantee, however, is subject to one overriding limitation, that "[n]othing in this paragraph shall be construed to limit the authority of the Secretary of State to determine the procedures for the processing of immigrant visa applications . . . ." *Id.* § 1152(a)(1)(B). The INA claim is barred by this limitation and dismissed.

### 4. The Fifth Amendment Discrimination Claims (Count Four)

Count Four asserts that Defendants violated Plaintiffs' Fifth Amendment right to equal protection by subjecting Yemeni petitioners and beneficiaries to discriminatory procedures to deny or prevent the adjudication of their visa petitions. This claim is dismissed as asserted by

Suhail because she is a non-resident citizen and has no claim under the Fifth Amendment and as asserted by Algazali for failure to state a claim.

### i. Suhail's Claim

The FAC alleges that various policies and procedures, while facially neutral, are applied against Yemeni visa applicants in a discriminatory manner. Yemeni visa applicants like Suhail, however, have no equal protection rights under the Fifth Amendment. The Court finds no support, and Plaintiffs point to no authority, that Suhail, as a nonresident noncitizen, enjoys rights under the Equal Protection Clause. *See Mandel*, 408 U.S. at 762 ("It is clear that [the visa applicant] personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country as a nonimmigrant or otherwise."); *accord Muñoz*, 602 U.S. at 908. Initial admission to the United States is a privilege, and the application for it entails no constitutional rights because the power to admit or exclude visa applications "is a sovereign prerogative." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138 (2020) (citing *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). The FAC does not state an Equal Protection claim on behalf of Suhail.

### ii. Algazali's Claim

The FAC fails to state a discrimination claim on behalf of Algazali in two respects. First, the FAC does not allege that his petition was subjected to any discriminatory conduct or treatment. After Algazali's first I-130 Petition was denied, his second I-130 Petition, filed on November 25, 2020, was approved on March 22, 2022. On the same day, Defendants forwarded the record to the Embassy in Cairo, Egypt, so that it could process Suhail's visa application. The FAC does not allege that Algazali suffered any adverse treatment with respect to his ability to petition as a spouse on behalf of his wife. Whatever rights remain for Suhail to obtain a visa belong to her, and Algazali cannot assert those rights on her behalf. *See Warth v. Seldin*, 422

U.S. 490, 499 (1975) (holding that a party "must assert his own legal rights" and "cannot rest his claim to relief on the legal rights . . . of third parties"); *Muñoz*, 602 U.S. at 917 (explaining that citizens lack procedural due process rights in the visa proceedings of others).

Second, even if Plaintiffs' petitions are viewed together as a single application, the FAC does not allege facts that show intentional discrimination. A plaintiff may challenge a facially neutral law under the Equal Protection Clause by alleging that the law was adopted with a discriminatory intent and applied with a discriminatory effect or is enforced in a discriminatory manner. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83, 111 (2d Cir. 2019). Either theory requires the plaintiff to allege "that a government actor intentionally discriminated against him on [an impermissible basis]." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000); *accord Richards v. City of New York*, No. 20 Civ. 3348, 2023 WL 3738489, at *5 (S.D.N.Y. May 30, 2023), *appeal dismissed*, No. 23-956, 2024 WL 3236427 (2d Cir. Mar. 13, 2024). The FAC does not allege any mistreatment during Algazali's petitioning process or allege facts that plausibly give rise to the inference that Defendants intentionally delayed Suhail's visa application because her husband (or she) is Yemeni.

Citing an Office of Inspector General report, the FAC alleges that the U.S. Embassy in Sana'a, Yemen -- now closed -- was confiscating American passports or certificates of naturalization without following regulations. The FAC also appends a policy memorandum -- now rescinded -- that subjected I-130 Petitions supported by Yemeni relationships to a higher evidentiary standard. The FAC describes Defendants' various "formal and informal" policies designed to prevent Yemeni-Americans from sponsoring their children for immigration visa applications or deriving citizenship to their children. But none of this conduct nor these policies were applied to Algazali nor did he experience anything similar. His documents were not

11

confiscated. His I-130 Petition was not denied. He did not apply on behalf of his child. Even construed most favorably to Plaintiffs, the FAC fails to allege that Defendants intentionally discriminated against Algazali personally or that he suffered any harm "because of" his national origin.

### III. CONCLUSION

For the foregoing reasons, the Government's motion to dismiss the FAC for failure to state a claim is **GRANTED**. Defendant Blinken is dismissed for the additional reason that he is not a proper party, an argument that Plaintiffs did not oppose.

Except for Algazali's discrimination claim in Count Four, the claims in the FAC are dismissed with prejudice and without leave to replead, as each claim is subject to a legal infirmity that could not be cured with repleading. If Algazali believes that he can cure the pleading deficiency in Count Four, by **February 14, 2025**, he shall file a proposed Second Amended Complaint alleging only that claim and marked to show changes from the FAC. The proposed pleading shall be filed as an attachment to a letter explaining the changes and how they cure the deficiency.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 45.

Dated: January 31, 2025
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE